

**FILED**

AUG 1 4 2013

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CASEY CARR, | * | CIV12-4097-RAL |
| | * | |
| Petitioner, | * | |
| | * | |
| vs. | * | OPINION AND ORDER DENYING |
| | * | PETITION FOR HABEAS CORPUS |
| | * | |
| SCOTT WILLIS, | * | |
| | * | |
| Respondent. | * | |

## I.   INTRODUCTION

On June 7, 2012, Petitioner Casey Carr ("Carr") filed a Petition for a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2241, Doc. 1, against Jordan Hollingsworth, the former warden of the

Federal Prison Camp at Yankton, South Dakota ("FPC Yankton"), where Carr is currently

incarcerated. Doc. 6 at 1. The United States Attorney's Office for the District of South Dakota ("the

Government") responded, Doc. 6, noting that Jordan Hollingsworth is no longer serving as warden

of FPC Yankton. Doc. 6 at 1. The Government observed that Scott Willis is the current warden at

FPC Yankton and therefore is the proper respondent. Doc. 6 at 1. This Court will substitute Scott

Willis for Jordan Hollingsworth to serve as Respondent. Carr seeks credit against his prison

sentence for time he spent in federal custody that was credited toward a separate state court sentence

he was serving before his federal sentence was imposed. Doc. 1.

## II.   FACTS

### A.   Offense and Imprisonment

On October 15, 2006, Carr was arrested in Houston, Texas. Doc. 6 at 4. A search of his car

1

uncovered evidence of cocaine, money, and a loaded firearm. Doc. 6 at 4. Carr was charged in

Harris County, Texas, with drug-related offenses and held in Texas state custody. Doc. 6 at 4. At

the time of his arrest in Houston, Carr was on probation from a drug offense conviction in Madison

County, Florida. Doc. 6 at 4; Doc. 9-2. On November 20, 2006, fugitive charges were filed against

Carr in Texas for violating the terms of his Florida probation by committing the offenses in Texas.

Doc. 6 at 4; Doc. 9-2.

After both Texas and Florida had filed charges, the federal authorities became involved. On

April 11, 2007, Carr was indicted in the United States District Court for the Southern District of

Texas for being a felon in possession of a firearm. Doc. 6 at 4. Due to the pending federal firearm

charges, Harris County dismissed the state firearm and drug charges on April 25, 2007. Doc. 6 at

4-5; Doc. 9. On May 3, 2007, Carr was turned over to Florida officials to face that state's probation

violation charge. Doc. 6 at 5; Doc. 9-1. On May 31, 2007, Carr was sentenced to thirty-six months'

imprisonment for violating the terms of his probation, and he commenced serving his sentence that

same day. Doc. 6 at 5; Doc. 9-2.

On July 13, 2007, the United States removed Carr from Florida custody pursuant to a writ

of habeas corpus ad prosequendum to face his federal gun charges in the Southern District of Texas.

Doc. 1 at 1; Doc. 6 at 5; Doc. 9-2. On October 4, 2007, Carr pleaded guilty to two crimes: (1) Felon

in Possession of Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (2) Possession

of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A).

Doc. 9-3 at 2. On April 8, 2008, about eight months after he was received into federal custody from

Florida custody, the Southern District of Texas sentenced Carr to 108 months imprisonment, a term

that would subsequently be reduced to 90 months. Doc. 9-3 at 8. The court ordered that Carr's

2

sentence "run concurrently to the remaining undischarged probation revocation sentence imposed in Madison County, FL, Case No. 04-109-CF." Doc. 9-3 at 3. Carr was remanded to the custody of the United States Marshal Service ("USMS") to begin serving his sentence that same day, April 8, 2008. Doc. 9-3 at 3. The Government states that Carr was returned to Florida state custody following his federal sentencing. Doc. 9 at 3. Carr completed his Florida sentence on January 23, 2009, after which he was turned over to the USMS for the completion of the remaining federal sentence and was sent to the Federal Prison Camp in Yankton. Doc. 6 at 5-6.

## B.    Credit Calculations

The Bureau of Prisons ("BOP") credited Carr's federal sentence for the time spent in Harris County, Texas' custody from the day of his arrest—October 15, 2006—until after he was turned over to Florida up until the day he started serving his Florida sentence—May 30, 2007. Doc. 1 at 2; Doc. 6 at 6. Credits for these periods of presentence incarceration are known as "Willis Credits" named after the rule outlined in Willis v. United States, 438 F.2d 923 (5th Cir. 1971) (per curiam). Although Willis was decided under a previous version of the statute, an inmate is nevertheless "entitled to receive Willis credit toward his federal sentence for all pre-sentence, non-federal custody that occurs on or after the date of the federal offense until the date that the first sentence (state or federal) begins." Edison v. Berkebile, 349 F. App'x 953, 956 (5th Cir. 2009) (per curiam) (citing BOP Program Statement 5880.28, Sentence Computation Manual, 7/19/99, p. 1-22).

Carr argues he was entitled to additional credit. Doc. 1. He argues BOP erred by refusing him presentence credit for the time he was received into federal custody from Florida state custody to face his charges in the Southern District of Texas on July 13, 2007, until the date his federal sentence was imposed on April 8, 2008. Doc. 1 at 2; Doc. 6 at 7. The Government argues that BOP

correctly determined that Carr is not entitled to credit for this period because this time spent in prison was before his federal sentence and was credited toward his Florida sentence. Doc. 6 at 14.

## III.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

Before addressing the merits, the Government argues that Carr failed to exhaust his administrative remedies and that this Court should dismiss his petition without prejudice until he completes his administrative appeals. Doc. 6 at 7. The Government argues that Carr has satisfied only two parts of the three part Administrative Remedy Program. Carr, however, contends that he "exhausted the Bureau of Prison's (B.O.P.) Three-tier administrative remedy process." Doc. 1 at 2.

Generally, a prisoner may not bring a habeas action challenging the execution of his sentence unless he first presents his challenge to the BOP through its administrative appeals process. Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009) (citing United States v. Chappel, 208 F.3d 1069, 1069 (8th Cir. 2000) (per curiam)). The exhaustion requirement protects administrative authority by allowing agencies charged by Congress with performing certain functions to have the first opportunity to correct their mistakes. Woodford v. Ngo, 548 U.S. 81, 86 (2006). Exhaustion also "promotes judicial efficiency" by either mooting controversies through administrative resolution or by developing a "useful record for subsequent judicial consideration" if administrative remedies fail. McCarthy v. Madigan, 503 U.S. 140, 146 (1992), superseded by statute, 42 U.S.C. § 1997e(a), as recognized by, Archuleta v. Hedrick, 365 F.3d 644, 647 (8th Cir. 2004) (noting that McCarthy was overruled in part by § 1997e(a)'s requirement that exhaustion is mandated for prisoner Bivens' claims for money damages).

BOP has created a three-tiered administrative review system entitled the Administrative

Remedy Program ("the Program"). See 28 C.F.R. §§ 542.10-19; Huff v. Sanders, 632 F. Supp. 2d 903, 907 (E.D. Ark. 2008); Doc. 7 at 2. Under the Program, the inmate first requests an informal resolution of his complaint from the institution's staff, and if that fails, he must raise the complaint with the warden. 28 C.F.R. § 542.13-14. Here, Carr satisfied this step. See Doc. 1-1 at 2 (showing Carr's "Informal Resolution Request" was denied); Doc. 1-2 at 3 (showing that Carr raised his complaint with Warden Tamyra Jones who denied his request for credit).

Second, because his informal resolution request failed, the Program requires Carr to appeal that decision to the Regional Director. 28 C.F.R. § 542.15(a). Carr appears to have satisfied this step as well by appealing the warden's decision to the regional level. See Doc. 1-2 at 2 (showing that Carr filed a "Regional Administrative Remedy Appeal"). The area provided for the appeal's determination by the Regional Office is left blank on the document that Carr provided. Doc. 1-2 at 2. Both parties agree, however, that Carr completed this step and that the Regional Office denied his appeal. Doc. 6 at 9.

Third, if the inmate is not satisfied with the Regional Director's decision on appeal, he may appeal to the General Counsel. 28 C.F.R. § 542.15(a). An appeal to the General Counsel completes the inmate's exhaustion requirement. 28 C.F.R. § 542.15(a). It appears that Carr failed to appeal to the General Counsel. He provides no documentation that he completed this step. The Government provided a Declaration by Julie Groteboer, Doc. 7, who is a Paralegal Specialist for the Consolidated Legal Center for Minnesota. Doc. 7 at 1. Groteboer states that "[t]o date, Carr has not filed an appeal to the Central Office level." Doc. 7 at 3.

While Carr apparently did not complete his appeals, he did seek an external review of the BOP's credit calculation from the U.S. Department of Justice Federal Bureau of Prisons Designation

and Sentence Computation Center. Doc. 1-3 at 2. That office told Carr that the computation was correct and instructed him that if he was "not satisfied with this response, you may appeal through the established administrative remedy procedures. I trust the above information is responsive to your request." Doc. 1-3 at 2. The Government did not address this document in its briefing, but it appears to be an extra-statutory request by Carr outside of the proscribed appeals process. Carr may have thought an appeal to the BOP's Designation and Sentence Computation Center was needed to satisfy the administrative exhaustion request, and Carr believes that he exhausted his administrative remedies. Nevertheless, it appears that Carr has not yet satisfied the third and final tier of the Program and, therefore, has not exhausted his administrative remedies.

"Where Congress specifically mandates, exhaustion is required." McCarthy, 503 U.S. at 146. But if Congress does not mandate exhaustion by statute, then "sound judicial discretion governs." Id. The United States Court of Appeals for the Eighth Circuit has held that the exhaustion requirement for habeas petitions "is judicially created and not jurisdictional." Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007) ("We note that our jurisdiction to decide this case is not affected by Lueth's alleged failure to exhaust his administrative remedies because the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional."). Thus, a court may exercise discretion and reach the merits of a habeas petitioners' claims that have not been administratively exhausted in certain circumstances. McCarthy, 503 U.S. at 146; see also Bartlett v. U.S. Dep't of Agric., 716 F.3d 464, 472 (8th Cir. 2013) (holding that if an exhaustion requirement is not jurisdictional, then "the common law exhaustion principle under which exhaustion of administrative remedies is favored, but may be excused by a limited number of exceptions to the general rule") (internal quotation marks and citation omitted). "In determining whether exhaustion

6

is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." McCarthy, 503 U.S. at 146. Administrative remedies need not be exhausted if the petitioner's "interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." Id. (internal quotation marks and citation omitted). This "balancing principle is 'intensely practical[.]'" Id. (quoting Bowen v. City of New York, 476 U.S. 467, 484 (1980)). Specifically, administrative exhaustion is not required when doing so would prejudice future court action or where the administrative body has pre-determined the issue before it. Id. at 146-48; see also Elwood v. Jester, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (noting that the Government agreed to waive the exhaustion requirement when it was conceded that any attempt at an administrative remedy "would be futile").

Although Carr's failure to complete his final appeal to the General Counsel and "substantial institutional interests" supporting the exhaustion requirement militate for dismissal of Carr's petition, this Court will not dismiss Carr's petition for failure to exhaust his administrative remedies through his failure to complete his final appeal to the General Counsel. Requiring further institutional remedies would not be in the best interests of either party. Carr's scheduled release date without the additional credit he seeks is now within eight months time and any additional delay could result in prejudice to Carr's ultimate review of his habeas petition in federal court. Further, administrative appeals would be futile because BOP has pre-determined that it cannot grant Carr the remedy for which he asks. BOP's Program Statement 5880.28 makes clear that, pursuant to 18 U.S.C. § 3585(b), BOP will not credit a federal inmate's sentence for a presentence detention period that was credited toward a state sentence. See United States Dept. of Justice, Federal Prison System,

Change Notice for Program Statement No. 5880.28, at 1-14A (September 9, 1999), available at

http://www.bop.gov/policy/progstat/5880_028.pdf (hereinafter "BOP Program Statement 5880.28");

Doc. 9-4 at 32. This document sets forth the "policies and procedures for the computation of

sentences imposed for violations of the United States Code," BOP Program Statement 58820.28 at

13, and has been described elsewhere as BOP's "internal sentencing manual." See Blood v. Bledsoe,

648 F.3d 203, 207 (3d Cir. 2011) (per curiam). This Court has an "unflagging obligation" to

entertain suits within its jurisdiction. McCarthy, 503 U.S. at 146. Because the practical balancing

of interests weighs in Carr's favor and because the BOP has pre-determined the issue Carr presents,

this Court will reach the merits of Carr's petition.

## B.    Double Credit

Carr argues that he is entitled to credit for the time period beginning July 13, 2007, when he

was received from Florida to face his federal charges, and August 8, 2008, when his federal sentence

commenced. Doc. 1 at 1. The Government argues that the BOP correctly calculated his sentence

and Carr is not entitled to federal presentence credit for this time period because 18 U.S.C. § 3585

disallows federal credit for pre-sentence custody that was credited to a different sentence. Doc. 6.

The Attorney General, through the BOP, is responsible for administering an inmate's

sentence and calculating the amount of presentence credit. See United States v. Wilson, 503 U.S.

329, 331 (1992); United States v. Pardue, 363 F.3d 695, 699 (8th Cir. 2004). Inmates, after

exhausting administrative remedies, are permitted to seek judicial review of the BOP's calculations

through filing a petition for habeas corpus pursuant to 28 U.S.C. § 2241. United States v. Tindall,

455 F.3d 885, 888 (8th Cir. 2006); see also Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002)

("A petitioner may attack the execution of his sentence through § 2241 in the district where he is

incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court.").

A court reviewing the propriety of a BOP presentence credit calculation must ensure BOP correctly determined two issues: (1) the date the federal sentence commenced; and (2) the amount of presentence credit which is warranted. See e.g., Stewart v. Outlaw, No. 2:12-CV-00159, 2012 WL 6652615, at *2 (E.D. Ark. Oct. 24, 2012) report and recommendation adopted, No. 2:12-CV-159, 2012 WL 6652743 (E.D. Ark. Dec. 20, 2012). A sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). A sentence, however, cannot commence prior to the date the sentence is pronounced. Sisemore v. Outlaw, 363 F. App'x 424 (8th Cir. 2010) (per curiam) (citing Coloma v. Holder, 445 F.3d 1282, 1283-84 (11th Cir. 2006) (per curiam)); see also Schleining v. Thomas, 642 F.3d 1242, 1244 (9th Cir. 2011) ("Although this court has not yet been called upon to determine when a federal sentence begins for a prisoner already serving a state term of imprisonment, other courts have interpreted § 3585(a) to mean that a federal sentence cannot begin *before* the defendant has been sentenced in federal court.") (emphasis in original).

Carr's federal sentence began on July 8, 2008, when the court pronounced his sentence to run concurrent to the remainder of his state sentence and remanded him to the custody of the USMS. Carr's federal sentence did not begin, as he argues, on July 17, 2007, when Carr was transferred into federal custody to face charges in the Southern District of Texas, because this date is before his sentencing hearing. Thus, BOP correctly calculated the date Carr's sentence commenced as July 8, 2008.

Next, this Court must examine whether BOP correctly calculated Carr's presentence credits. Section § 3585 provides that a defendant will be given credit toward his federal sentence for time spent in presentence detention "as a result of the offense for which the sentence was imposed; or . . . as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed . . . that has not been credited against another sentence." As the statute makes clear, a defendant can only "receive credit for detention time 'that has not been credited against another sentence.'" Wilson, 503 U.S. at 333 (quoting 18 U.S.C. § 3585(b)); see also United States v. Kramer, 12 F.3d 130, 132 (8th Cir. 1993) (holding that BOP cannot give credit toward federal sentence for time period already credited toward another sentence because such action "would have contravened the proscription in 18 U.S.C. § 3585(b) (1988) against double crediting").

The time period for which Carr seeks credit was credited toward his Florida sentence. The plain language of § 3585 makes clear that Carr is not entitled to credit for this period because doing so would circumvent the express prohibition against double credit directed by Congress through 18 U.S.C. § 3585. Kramer, 12 F.3d at 132. The argument Carr makes has been raised and rejected numerous times in district courts throughout the Eighth Circuit. See e.g., Lopez v. Fisher, No. 10-2407, 2012 WL 6778518 (D. Minn. Nov. 29, 2012) report and recommendation adopted, No. 10-CV-2407, 2013 WL 74363 (D. Minn. Jan. 7, 2013); Singleton v. Hollingsworth, No. 05-2082, 2006 WL 2067761 (D. Minn. July 24, 2006). While, the district court at sentencing could possibly have considered lessening Carr's sentence pursuant United States Sentencing Guidelines § 5G1.3(b-c) if the situation merited such leniency, see United States v. Campbell, 617 F.3d 958, 962 (7th Cir. 2010), BOP correctly determined Carr was not entitled to presentence credit for the disputed time period pursuant to § 3583.

## IV.    Conclusion

For the reasons explained in this Opinion and Order, it is hereby

ORDERED that Scott Willis hereby is substituted as the Respondent in place of Jordon Hollingsworth.  It is further

ORDERED that Petitioner's Petition for a Writ of Habeas Corpus, Doc. 1, is denied with prejudice.

Dated August 14th, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE